UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AF PORTFOLIO (BVI) III INC.,

                Plaintiff,

    -against-

OCTAVE-1 LTD., OCTAVE-1 FUND, LTD.,
OCTAGON ASSET MANAGEMENT, LLC,
OCTAGON INTERNATIONAL HOLDINGS,
LLC,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff AF Portfolio (BVI) III Inc. ("AF Portfolio" or "Plaintiff") as and for its Complaint against defendants Octave-1 Ltd., Octave-1 Fund, Ltd., Octagon Asset Management, LLC, and Octagon International Holdings, LLC (collectively "Defendants"), alleges as follows:

### NATURE OF ACTION

       1.    This is an action for recovery of money damages for breach of contract, conversion, and unjust enrichment relating to Defendants' unlawful and unauthorized retention of approximately $128,000, plus interest, that is due and owing plaintiff AF Portfolio as result of AF Portfolio's redemption of its investment with Defendants. Plaintiff also seeks an accounting with respect to that portion of its investment still controlled by Defendants.

### PARTIES

       2.    Plaintiff AF Portfolio (formerly named AF Portfolio Developing Managers (BVI) Limited) is a corporation organized and existing under the laws of the British Virgin Islands and maintains a place of business at Sterling House, 16 Wesley Street, Hamilton HM 11, Bermuda.

745779_1

3. Defendant Octave-1 Fund, Ltd. ("Octave-1 Fund") is a corporation organized and existing under the laws of the Cayman Islands, registered as a mutual fund with the Cayman Islands Monetary Authority.

4. Defendant Octave-1, Ltd. ("Octave-1") is a corporation organized and existing under the laws of the Cayman Islands, and a feeder fund of Octave-1 Fund, Ltd.

5. Defendant Octagon Asset Management, LLC ("OAM") is a New York limited liability company with its principal place of business located at 267 Fifth Ave., New York, New York. OAM is the investment advisor to Octave-1 Fund and Octave-1.

6. Defendant Octagon International Holdings, LLC is a New York limited liability company and, upon information and belief, owns and controls OAM.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the jurisdictional threshold and the action is between citizens of a state and subjects of a foreign state.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) or (3).

## FACTS

9. On February 24, 2005, AF Portfolio entered into a subscription agreement with Octave-1 (the "Subscription Agreement"). Pursuant to the Subscription Agreement, AF Portfolio purchased shares in Octave-1, a Cayman Island hedge fund.

10. Octave-1 was a feeder into a master hedge fund, Octave-1 Fund. The investment manager for both Octave-1 and Ocatve-1 Fund is OAM.

11. C. Mead Welles ("Welles") is the founder, president and CEO of OAM and, upon information and belief, the majority and controlling stakeholder in Octagon

745779_1

International Holdings. Welles is also Director of Octave-1 Fund and Octave-1. Thus, the Defendants are all related entities.

13. The Subscription Agreement provided that the purchase of shares in Octave-1 was to be "in accordance the terms and conditions of the Private Offering Memorandum of the Company [Octave-1], as amended or supplemented from time to time (the "POM")."

13. The POM in place at the time the Subscription Agreement was executed was dated September 30, 2003 (the "Sept. 2003 POM"). With respect to the redemption of shares, the Sept. 2003 POM allowed a shareholder to redeem all or part of its shares on sixty (60) days notice, such redemption to be effective on the first business day of the month following the sixty day notice period (the "Effective Date"). As for the settlement of redeemed shares, the Sept. 2003 POM expressly states: "Requests for redemptions will generally be settled within 30 days after the Effective Date, without interest. However, in the Company's discretion, settlement may be delayed for up to 90 days following the Effective Date, but in any such case the amount redeemed shall bear interest at the London Interbank Offered Rate from the Settlement Date to the Effective Date."

14. An amended POM, dated May 1, 2005 (the "May 2005 POM"), contains language identical to the Sept. 2003 POM with respect to the redemption and settlement of shares.

15. By letter dated January 5, 2006, AF Portfolio instructed Octave-1 to fully redeem AF Portfolio's shares in Ocatve-1 as of March 31, 2006.

16. AF Portfolio was paid approximately 90% of the balance owed to it as a result of the redemption its shares. Despite its right to have its request for redemption settled

within ninety (90) days of the Effective Date, AF Portfolio was advised by Defendants that the remaining 10% of the redemption amount would not be paid until Octave-1's 2006 audit was completed.

17. Defendants have confirmed this 10% holdback amounts to $528,002.75, exclusive of interest (the "Holdback").

18. Neither the Subscription Agreement nor the applicable POMs give Defendants the right to retain the Holdback beyond 90 days of the Effective Date of redemption.

19. AF Portfolio repeatedly requested, over a period of more than two years, that the Holdback be paid (with interest).

20. In a late March 2008 meeting regarding status of the Holdback, the AF Portfolio demanded prompt payment of the Holdback, pointing out that the POM did not authorize the Defendants to retain the Holdback until the relevant audit was completed. Defendants produced a February 2006 POM which authorized a Holdback pending completion of the relevant audit. AF Portfolio pointed out that a February 2006 POM was irrelevant since it had submitted its redemption request in January 2006. AF Portfolio also added that it had never received a copy of the February 2006 POM.

21. In May 2008, for the first time, Defendants asserted the existence of a September 2005 POM which allegedly allowed Defendants to retain the Holdback until the relevant audit was completed.

22. AF Portfolio advised Defendants that it had no record of ever receiving a copy, or even notice of the existence, of any September 2005 POM in either a draft or in final version. Moreover, at no point did Defendants ever previously mention this September 2005 POM in any correspondence or other communications with AF Portfolio or its counsel.

23. Finally, after repeatedly promising and then failing to make any payment to AF Portfolio, on July 11, 2008 Defendants paid AF Portfolio only a portion of the Holdback, specifically $400,000.

24. Defendants have repeatedly advised that the remaining balance of $128,002.75 plus the interest due at the agreed upon rate for the full Holdback amount (the "Holdback Balance"), will be paid upon completion of Defendants 2006 audit.

25. Defendants, however, have repeatedly asserted that the audit would be completed by a date certain and then provided excuses as to why finalization of the audit would again be delayed.

26. Defendants' repeated excuses and endless delays in finalizing its audit at this point offer AF Portfolio no assurance that Defendants will finalize its audit by any date certain or that Defendants will in fact pay AF Portfolio the full Holdback Balance if its audit is in fact ever finalized.

27. In addition to the Holdback, a portion of AF Portfolio's interest in Octagon-1 relating to a particular cotton investment that had become mired in legal battles was segregated, and moved into a "sidepocket" at the request of Defendants (the "Sidepocket").

28. While AF Portfolio agreed to the creation of the Sidepocket in September 2005, it has repeatedly asked for updated valuations of the Sidepocket and an expected timeframe for payment of AF Portfolio's interest in the Sidepocket.

29. Defendants have refused to provide an adequate accounting of the Sidepocket.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

30. Plaintiff's allegations set fort above are repeated and realleged as if fully set forth herein.

31. Defendant Octave-1 has breached the Subscription Agreement by failing to pay AF Portfolio the Holdback Balance.

32. Defendants Octave-1 Fund, OAM, and Octagon International Holdings, LLC orchestrated and benefited from the breach of the Subscription Agreement and Octave-1 is their instrumentality or agent. Therefore, Octave-1 Fund, OAM, and Octagon International Holdings, LLC are also liable for the breach of the Subscription Agreement.

33. Defendants' breach of the Subscription Agreement has damaged AF Portfolio in the amount of $128,002.75 plus interest due at the agreed upon rate for the full Holdback.

## SECOND CAUSE OF ACTION
### (Conversion)

34. Plaintiff's allegations set fort above are repeated and realleged as if fully set forth herein.

35. The Holdback Balance is property of AF Portfolio and Defendants intentionally and without authority exercise control over the Holdback Balance in derogation of AF Portfolio's rights.

36. As a direct and proximate cause of Defendants' conversion, AF Portfolio has suffered damages in the amount of $128,002.75 plus interest due at the agreed upon rate for the full Holdback.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

37. Plaintiff's allegations set fort above are repeated and realleged as if fully set forth herein.

38. Defendants have been unjustly enriched at the expense of AF Portfolio by retaining the Holdback Balance.

39. It is against equity and good conscience to permit Defendants to retain monies that should have been paid to AF Portfolio.

40. AF Portfolio is entitled to restitution in the amount of $128,002.75, plus interest due at the agreed upon rate for the full Holdback, by which Defendants have been unjustly enriched.

## FOURTH CAUSE OF ACTION
### (Accounting)

41. Plaintiff's allegations set fort above are repeated and realleged as if fully set forth herein.

42. AF Portfolio has demanded that Defendants account to it and furnish it with sufficient information to determine the value of the Sidepocket.

43. Defendants have failed and refused to provide AF Portfolio with a full, complete and accurate accounting sufficient for AF Portfolio to determine the true value of its investment.

44. AF Portfolio is entitled to an accounting that will enable it to properly value its investment in the Sidepocket.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a.  award damages in an amount to be determined at trial but not less than $128,002.75 plus interest due at the agreed upon rate for the full Holdback;

b.  order Defendants to provide an accounting of AF Portfolio's investment in the Sidepocket;

c.  award attorneys fees and costs; and

d.  order such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        September 2, 2008

                              SATTERLEE STEPHENS BURKE & BURKE LLP

                              By: _____*Thomas Cahill*_____
                                    Thomas J. Cahill (TC-3490)
                                    James Regan (JR-7926)
                              230 Park Avenue
                              New York, New York 10169
                              (212) 818-9200
                              *Attorneys for Plaintiff AF Portfolio (BVI) III Inc.*

745779_1